IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 11-00189-CG-C |
| | ) |
| JOHN B. FOLEY, IV, and | ) |
| LAUREN M. FOLEY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the court on the motion for summary judgment of the plaintiff, SE Property Holdings, LLC ("SEPH").  SEPH is the successor in interest to the original plaintiff in this action, Vision Bank.  This court previously granted Vision Bank's motion to substitute party (Doc. 29), which served to designate SEPH as the plaintiff after it merged with Vision Bank.  See Doc. 28-1.  Because the plaintiff's motion for summary judgment was filed before SEPH succeeded Vision Bank, however, this court will address the parties' arguments as they were stated by the parties in their motions and briefs.  After consideration of the parties' briefs in support and in opposition (Docs. 23, 27, and 34), and for the reasons enumerated below, the court finds that SEPH's motion for summary judgment is due to be **GRANTED**.

1

I.   FACTUAL BACKGROUND

(a)   LOCAL RULE 7.2(b)

As an initial matter, Local Rule 7.2(b) states with regard to a party opposing summary judgment that "if it is contended that there are material factual disputes, [the opposing party] shall point out the disputed facts appropriately referenced to the supporting document or documents filed in the action." The defendants have not done so, and therefore the court presumes that there exist no disputed material facts in the case. Accordingly, the court adopts the factual allegations contained in Vision Bank's "Suggested Determinations of Law and Order" (Doc. 25). See Patton v. City of Hapeville, Ga., 162 Fed. App'x. 895, 896 (11th Cir. 2006).

Thus, the facts of the case are as follows: as part of a loan transaction in September 2009, John Foley executed a "Multipurpose Note and Security Agreement" in the principal amount of $379,634.03 ("Loan #93955" also referred to as "the Note"). (Doc. 1-6). Loan #93955 was scheduled to mature on November 30, 2010. Id. at 1. The Note is a form contract, with the applicable provisions checked. By its terms, the Note is due on demand or, if no demand, then "[p]rincipal and interest are payable in 13 equal installment payments, amortized over 240 payments, in the amount of $2,738.68 each, commencing on October 30, 2009 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of principal and all accrued interest remaining due and payable on November 30, 2010." Id. at 1. The Note gives Vision Bank the right to accelerate the maturity of the Note if the borrower defaults. Among the listed events of

default is "fail[ure] to make a required payment when due." Id. The Note also contains provisions regarding post-maturity interest, which states:

> **Post-Maturity Interest** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues prior to maturity unless a specific post maturity rate is agreed to in the next sentence.

Id. The next sentence is checked and states that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration." Id. Finally, in the event of default, the Note permits Vision Bank to recover reasonable costs and attorney's fees incurred in attempting to collect the debt. Id.

On approximately January 3, 2010, Foley executed a "Modification, Extension, Change in Terms Agreement" which modified the variable interest rate on Loan #93955 but did not change the loan's maturity date. (Doc. 1-7). In October 2010, Foley did not make the monthly payment as required by the loan agreement, and the bank subsequently declared Loan #939500 in default on November 9, 2010. (Doc. 24-1, p. 3). As of February 10, 2012, the total amount owed on Loan #93955, including the principal, pre-default interest, and post-default interest, was $466,406.02. Id.

Foley also executed a second "Multipurpose Note and Security Agreement," this one with his wife, Lauren, in the principal amount of $474,795.51 ("Loan #301700," also referred to as "the second Note"). (Doc. 1-9). Loan #93955 was scheduled to mature on November 30, 2010. Id. at 1. The second Note is also a form contract, with the applicable provisions checked. By its terms, Loan #301700

3

is due on demand or, if no demand, then "[p]rincipal and interest are payable in 13 equal installment payments, amortized over 360 payments, in the amount of $2,873.33 each, commencing on October 31, 2009 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of principal and all accrued interest remaining due and payable on November 30, 2010." Id. at 1. The second Note contained the same provisions with regard to acceleration of maturity, the definition of a default, and post-default interest as described in Loan #939500, supra.

On approximately January 3, 2010, the Foleys executed a "Modification, Extension, Change in Terms Agreement" which modified the variable interest rate on Loan #301700 but did not change the loan's maturity date. (Doc. 1-10). The Foleys subsequently failed to pay the loan when it matured in November 2010, and Vision Bank accordingly declared loan #301700 to be in default on December 10, 2010. (Doc. 24-1, pp. 4-5). Vision Bank then foreclosed on the property securing the note on July 15, 2011. Id. Vision Bank applied a credit of $329,500.00 to the amounts due on Loan #301700. Id. at 5.

Two weeks after the foreclosure, Vision Bank sold the foreclosed property to SEPH for $399,500.00 and applied a further $70,000 credit to the amount due on Loan #301700 (representing the difference between the sale price to SEPH and the foreclosure amount). Id. As of February 10, 2012, the total amount owed on Loan #301700, including the principal, pre-default interest, and post-default interest was $144,263.19. Id. at 6.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might

differ on the inferences arising from undisputed facts, then [a court] should deny summary judgment." Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 432 Ded. App'x. 867, 870 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for

6

trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

### III.  LEGAL ANALYSIS

In support of its motion for summary judgment, SEPH has presented signed copies of the two Notes and appurtenant modification agreements. (Docs. 1-6, 1-7, 1-9, and 1-10). SEPH has also presented an affidavit from Karen Harmon, Vision Bank's Vice President for Operations and now SEPH's Assistant Secretary, attesting that the two Notes are in default, that demand has been made, and setting forth the outstanding balances. See Doc. 24-1.

**(a)   PROOF OF THE ELEMENTS OF BREACH OF CONTRACT**

The defendants argue that summary judgment is inappropriate because Vision Bank has failed to sufficiently establish that it fully performed its obligations under Loan #939500 and Loan #301700. (Doc. 27). Specifically, the defendants assert that there is no evidentiary proof that Vision Bank ever actually loaned any money to them under either loan. Id. at 2. This argument is belied by the two loan documents themselves, each of which recites the amount of the respective loan, and states that "I [,borrower,] have received all of this principal sum." (Doc. 1-6, p. 1 and Doc. 1-9, p. 1). Loan #93955 is signed by John Foley alone and Loan #301700 is signed both by John and Lauren Foley. Id. This clearly establishes both the existence of a valid contract binding Vision Bank and the Foleys, as well as Vision Bank's performance under the two loan agreements. See Vision Bank v. 145, LLC,

2011 WL 5289070, *4 (S.D. Ala. 2011) (noting that a creditor proves its performance by showing that it loaned money to the debtor).

As for the remaining elements of breach of contract, Vision Bank has provided the affidavit of its Vice President of Operations, Karen Harmon, who states that John Foley failed to make the monthly payment as required by Loan #93955 in October 2010 and that the loan was declared to be in default in November 2010. (Doc. 24-1, p. 3). Harmon also states that Loan #301700 reached maturity without payment by John and Lauren Foley. Id. at 4. Finally, Vision Bank also asserts that it was damaged by the Foleys' nonperformance, and provides case law to support the proposition that the requisite element of damage is met when a lender is not repaid. (Doc. 23, p. 12) (citing Vision Bank v. 145, LLC, 2011 WL 5289070, *4 (S.D. Ala. 2011).

The Foleys have not disputed these allegations, beyond their conclusory assertion that "Vision Bank has not established the required elements for breach of contract through admissible evidence." (Doc. 27, p. 2). This argument holds no water. No reasonable jury could possibly find for the Foleys under the facts recited above.

    **(b)  ALLEGED FAILURE TO MITIGATE DAMAGES**

John Foley also opposes summary judgment with regard to Loan #93955 on the ground that Vision Bank failed to mitigate its damages by not foreclosing on his property and instead allowing interest to accrue from the date that the loan was declared to be in default until the present. (Doc. 27, p. 3). In support of this rather

conclusory legal proposition, Foley cites but one case, the facts of which bear no resemblance to the facts of the case at bar. The cited case, Britton v. Doehring, 242 So.2d 666 (Ala. 1970), arose out of an automobile collision and hinged on whether the plaintiff's failure to wear a seatbelt was admissible evidence of her failure to mitigate damages. Id. at 672. This case tells the court nothing about a bank's purported duty to foreclose upon property within a given period of time, rather than allowing interest to accrue. If Foley wishes to pursue such a legal theory, it is incumbent upon him to perform the necessary research and develop that argument, rather than citing to a solitary, inapposite case and expecting this court to fill in the gaps. See Vision Bank v. Merritt, 2010 WL 5474161, *4 (S.D. Ala. 2010) (citing Federal Ins. Co. v. County of Westchester, 921 F.Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").

Additionally, while Vision Bank does have the right to foreclose, foreclosure is not a condition precedent to recovery. See Doc. 1–6, p. 2, "Additional Terms of the Security Agreement," ¶13 and Doc. 1-9, p. 2, "Additional Terms of the Security Agreement," ¶ 13) (setting out Bank's rights under security agreement in event of default).

    **(c)**    **THE AMOUNT OF POST-JUDGMENT INTEREST**

Post-judgment interest in a civil case is determined by 28 U.S.C. § 1961(a) which provides that the rate of interest "shall be calculated from the date of the entry of the judgment [ ] at a rate equal to the weekly average 1–year constant

9

maturity Treasury [bill] … for the calendar week preceding the date of the judgment."  Id.; see also G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1542 (11th Cir. 1985) (holding that § 1961 applies in diversity cases). Vision Bank contends that a different rate applies in this instance—the 18% default interest rate specified in the Note.  The issue is actually twofold: (1) Can the parties override the statutory rate by agreement? (2) If so, does the contract in this case demonstrate such an agreement?

Although the Eleventh Circuit has never addressed the issue, the consensus among courts that have is that parties may agree to a different post-judgment interest rate.  See, e.g., FCS Advisors, Inc. v. Fair Finance Co., Inc., 605 F.3d 144, 148–49 (2nd Cir. 2010); In re Riebesell, 586 F.3d 782, 794 (10th Cir. 2009); Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1020 (7th Cir. 2001); In re Lift & Equip. Serv., Inc ., 816 F.2d 1013, 1018 (5th Cir. 1987); Carolina Pizza Huts, Inc. v. Woodward, 67 F.3d 294 (4th Cir. 1995) (unpublished table decision).  However, "federal law requires 'language expressing an intent that a particular interest rate apply to judgments or judgment debts' to be 'clear, unambiguous and unequivocal.' " Jack Henry & Associates, Inc. v. BSC, Inc., 753 F.Supp.2d 665, 670 (quoting FCS Advisors, 605 F.3d at 148).  This requirement arises from the principal that the debt is extinguished upon entry of judgment and a new debt, a judgment debt, is created.  Id. "The parties must explicitly state that they are agreeing to a postjudgment interest rate." Id.

10

The loan agreements in this case do not contain the type of "clear, unambiguous and unequivocal language" necessary to circumvent the statutory interest rate.  Here, the parties merely agreed that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration."  (Doc. 1-6, p. 1 and Doc. 1-9, p. 1).  Vision Bank argues that "post-maturity" includes all times after the entry of judgment.  (Doc. 23, p. 14).  Similar arguments have been uniformly rejected.  See, e.g., In re Riebesell, 586 F.3d at 794 (contract's default interest rate provision not sufficient to override statutory rate); Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2nd Cir. 2004) (contractual agreement adding 15% interest rate to arbitration award from "date payment was due" did not override statutory rate); Jack Henry, 753 F.Supp.2d at 670–72 (interest rate applicable to past due amounts insufficient).  Because Loan #93955 and Loan #301700 do not contain an express provision for a post-judgment interest rate, Vision Bank is entitled to post-judgment interest only to the extent provided by § 1961(a).

**(d)   ATTORNEYS' FEES AND COSTS**

Vision Bank also argues that it should recover from the Foleys all of its reasonable expenses incurred to collect this debt. As a reasonable expense, Vision Bank seeks attorneys' fees in the amount of $27,530.00 and expenses of $927.18. In support thereof, Vision Bank provides the affidavits of it counsel, Ashley Swink and its expert, Charles J. Fleming.  (Doc. 24-2 and Doc. 24-3, respectively).

In the paragraph entitled "Attorneys Fees and Other Collection Costs", the promissory note provides as follows:

> If I am in default and you have to sue or take other steps to collect or secure this note, I agree to pay you reasonable costs.  If the original amount financed is greater than $300 and if you refer this note to an attorney who is not your salaried employee, I agree that these costs include a reasonable attorney's fee.

(Doc. 1-6, p. 2, "Additional Terms of the Note," ¶12 and Doc. 1-9, p. 2, "Additional Terms of the Note," ¶12).  Based on the unambiguous terms of the note, along with the affidavits of Swink and Fleming, the court finds that Vision Bank is entitled to recover costs and reasonable attorneys fees.  See Peppertree Apartments, Ltd. v. Peppertree Apartments, 631 So.2d 873, 878 (Ala. 1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous."); see also Doc. 24-2 and Doc. 24-3.

In regard to the reasonableness of the fees and expenses submitted, the Court must consider and address the relevant factors under Alabama law.[1]  Lolley v. Citizens Bank, 494 So.2d 19 (Ala. 1986) (vacating judgment pertaining to attorneys' fees for collection of a promissory note where the record did not disclose what factors the court considered in reaching its decision).

The complete list of criteria used in the estimation of the value of an attorney's services under Alabama law includes the following: (1) the nature and

---

[1] The complaint was brought on a basis of diversity jurisdiction, thus, the laws of the State of Alabama apply.  Additionally, both loan agreements provide that Alabama law will apply. (Doc. 1-6, p. 2, ¶13 and Doc. 1-9, p. 2, ¶13).

value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.  Wachovia Bank, National Ass'n v. Johnson, 2009 WL 1383315, *5 (S.D. Ala. 2009) (quoting Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala. 1988).  Of course, not all of the criteria will be applicable.

As stated, supra, the Foleys did not address the issue of fees or expenses in their opposition brief, and thus, did not provide the court with any evidence to dispute Ms. Swink's or Mr. Fleming's affidavits.  Thus, upon consideration of the affidavit and the relevant factors set forth above, the Court finds that the attorneys' fees and expenses are reasonable under the circumstances.  Swank and Fleming outline their knowledge of the length of the attorney-client relationship between Vision Bank and Phelps Dunbar for the collection of this debt; the fees and expenses charged to Vision Bank and the customary fee charged to similar business clients by firms in the Mobile area for similar litigation; and the services performed for Vision Bank consisting of the preparation and filing of the lawsuit and the motion for summary judgment.  See Docs. 24-2 and 24-3.


...


"The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonablen and proper fees and may form an independent judgment with or without the aid of witnesses." Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).  This court finds no reason to dispute or question Swink's or Fleming's opinion, a conclusion that is bolstered in part by the fact that the defendants did not see fit to do so themselves. Accordingly, summary judgment is **GRANTED** in favor of Vision Bank as to its claim for a reasonable attorneys' fee and expenses. By separate document, judgment shall be entered against John B. Foley, IV and Lauren M. Foley in the amount of $27,530.00 for attorneys' fees, expenses in the amount of $927.18, and expert fees in the amount of $275.00.

## IV.   CONCLUSION

Upon consideration of the evidence, and for the reasons enumerated above, the Court finds that there is no genuine dispute as to any material fact regarding plaintiff's claim and it is entitled to judgment as a matter of law. Accordingly, Vision Bank/SEPH's motion for summary judgment as to Counts III and IV are **GRANTED**.

**DONE** and **ORDERED** this 20th day of April 2012.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE